A .WRIT of fieri facias, fir satisfaction of a judgement, rendered by Hanover county court, in an action, which the defendant had prosecuted against his father, of the same name, fir *329 4971,’ Is,’ I'd,’ 3q,’ with interest and costs, was delivered in may of the year 1792, to the plaintiff John Clough, a deputy of the other plaintiff, who was sheriff of Hanover, to be executed.
The plaintiff John Clough, by that authority, seised the •whole estate of John Bullock, the father, and sold it, for 2061,’ 3s,’ 6d,’ to the defendent, who was highest bidder, in june, 1792.
In january or february, 1795, William L. Thompson applied to the defendent for settlement of an account of taxes, fees, &c. amongst which was the plaintiff John Cloughs bill of the com•mission, claimed by him from the defendent, for serving Ins execution against his father, the defendent then refused to enter upon the settlement, unless the plaintiff John Clough should he present, and desired Thompson to appoint a time, "when those three parties should meet together, at the defendants house, for adjusting this business, alleging, that, as he conceived, the plaintiff John Clough was not entitled to so much, as he had charged, for commission, at the same time, the defendant, who had enquired of Thompson whether the plaintiff Clough had returned the execution, which enquiry was answered uncertainly, said he wished the plaintiff not to return it until the settlement.
This fact, namely, that the defendent said he wished the plaintiff John Olongh not to return the execution before the settlement, is testified by a single witness, and was said not to be proved, because the defendent, as was supposed, contradicted it by his answer, sworn by him to he true, but the answer doth not contradict the testimony, the bill stated, that the plaintiff in the judgement, now defendent, who, in june, 1792, bought all his fathers property, when it was exposed to sale by the fieri facias, and who acknowledged the receipt of it by a certificate, at tire same time, that is in June, 1792, desired and requested the plaintiff John Clough, to retain the execution, and not deliver it into the clerks office, until they should have an opportunity of making a statement and settlement, to this the defg> dent answers in these terms: ‘ he positively deniesi 1 requested the complainant Clough, to retain the oxea ‘ not deliver it into the clerks office, until they shou$ ‘ opportunity of making a statement and settlement, ri% ‘ use any expression [that is, as the court understanijtHiV'use ‘ any expression, at that time, to Clough] having any|tendfflM¡5^ fto keep up the execution ; on the contrary, he positivl^-Stewft'T*' (that he requested m’r Clough to return the execution, c he often repeated the request, befbie he made the motion""for ‘ the judgement now enjoined.’ all this may be true ; and yet *330 the deposition of the witness, that the defendent, in a conversa-, tion between them, 32 or 33 months afterwards, said to a collector, ‘ he wished John’Clough would not return the execution ‘ until the settlement between hirn and the defendent,’ may be true likewise, if the fact here contested, that is, the defendants consent to the plaintiffs retention of the execution, had been denied by the answer, in direct opposition to the testimony, the latter, accredited by probability, from the confessedly true circumstances of the fathers inability to discharge more- of the judgment, and from the consequential insignificance of a return ; from the enquiry whether the precept had been returned, and from the unsettled account of the commissions, would outweigh the former.
Upon this occasion, the court observed the danger, to which a plaintiff exposeth himself, when, in propounding interrogatories, he requireth a defendent, as is done'in almost every bill in equity, to admit or deny facts, which the plaintiff could, otherwise, prove or disprove satisfactorily, by a single witness to each ; for where a defendent affirmeth or denieth a fact, of which he is required to discover the truth or falsity, and of which to give testimony in his answer he is compelled by the plaintiff, f e matter controverted must be in (¿equilibrio, if either a greater number of witnesses do not contradict the answer, or coincident circumstances do not add a praeponderating momentum to the testimony of a single contradicting witness ; whereas if a discoverv be not required, a defendent is not bound to answer upon oath, and, against his answer, whether on oath or not, in such a case ; the. simple testimony of one credible witness is affirmed to be prevalent over the answer ; in other words the answer is no more than a partys allegation without oath.
To return from this digression — at a time, for the plaintiff John Clough to attend, appointed by the defendent, when a final settlement was completed, and at other times, the defendent acknowledged, that he did' not expect to get any thing more from his father — that, in truth, his father then had no estate — adding, that imprisonment of his fathers body, which was all that his creditors could now take, would be distressing to the defendent. and here one might expect he would have rested, yet,
On the 7th of may, 1795, upon a motion on his behalf, the court of Hanover county fined theplantiff Park Goodall, for the use of the defendent, (a) 264i,’ 8s,’ 9d,’ for the plaintiff John *331 Cloughs default in neglecting to return the fieri facias, in august, 1792, as the writ required ; and condemned him to pay the fine with costs.
This procedure was authorized by the statute in 1791, reciting, that £ doubts have arisen in what manner judgement should £ be rendered against any sheriff, coroner, or sergeant of a cor- £ poration, who shall fail to return an execution to the office £ from whence it issued, on or before the return day thereof;’ £ and enacting, that, where any writ of execution, or attach- £ ment for not performing a decree in chancery, shall come into £ the possession, of any sheriff, coroner, or sergeant of a corporation, and he shall fail to return the same to the office, from £ whence it issued, on or before the return day thereof, it shall £ be la vfull for the court, ten days previous notice being given, £ upon the motion of the party injured, to fine such sheriff, £ coroner, or sergeant of a corporation, at their discretion, in any £ sum, not exeeding five dollars, per month, for every one hun- £ dred dollars contained in the judgement or decree, on which £ the execution or attachment, so by him detained, was founded, £ and so in proportion for any greater or lesser sum, counting £ the aforesaid months from the return day of the execution or 4 attachment to the day of rendering judgement for the said fine.’
The plaintiffs counsil objected, that the fine was not appropriated by the statute, to the use, although it was recoverable o.n the motion, of the party injured ; affirming that all fines, before the revolution, were payable to the king ; and observing that now such as were not differently devoted or abolished were, by the constitution, transfered to the commonwealth.
This is incorrect, not all fines, but, only those inflicted for offences against the government, were formerly payable to the king, the fine in this case is appropriated to the party injured, because it is recoverable on the motion, that is, by the action, of the party injured, an action is a juridical vindication of that which the actor allegeth to be due to him. he, therefore, who hath the right to the action, hath, per hypothesin, the right to the thing demanded — recovers that which is due'to him.
The plaintiff Park Goodall, the sheriff, condemned for the mulct incurred by the default of his deputy, the other plaintiff, instituted, in Hanover county court, a process, and obtained a *332 sentence, against him, for reimbursement, but consenteth to suspend the farther prosecution of that demand, unless it shall become necessary by decision of the questions, now controverted,
Whether any fine, except a (b) conditional fine, ought to have been inflicted, for not returning the fieri facias 9 if the fine were excessive, or otherwise unrighteous, whether, in the language of the answer, ‘ any matter of equity be suggested in ‘ the bill, which can gire to'this court jurisdiction?’ and, whether such matter, although not suggested in the bill, appear in the case, as will justify the courts interposition — give it jurisdiction ?
The court discussed these questions in the following terms :
The neglect to return the precept was not, could not be, (c) detrimental to the defendent. he doth not even pretend it to have been so. the neglect to return the preftept, if it were not and could not be detrimental to the defendent, was not injurious to him. besides if William L’ Thompson may be credited, the return of the fieri facias was retarded, if not by desire, with consent, of the defendent; and volenti non fit injuria, the sentence of Hanover court, authorized to inflict a flue on motion of a party INJURED only, inflicting that fine on motion of a party (d) NOT injured, is, therefore, a void act. and after answer filed, and no plea in abatement to the jurisdiction of the court, (for surely this answer deserveth not to be called a plea in abatement,) this court is prohibited, by statute in 1787, *333 ch’ 9, to admit an exception for want of jurisdiction, or to delay or refuse justice, the defendents counsil, by these words, dictated to his client: £ this respondent canuot conceive the de- £ fence set up by the complainant Clough to be better in a court £ of equity than of law,’ is supposed to have meditated an objection to this purpose : the statute, authorising the procedure by motion against the officer, who neglects to return a, writ, of execution or attachment, entrusted the court of common law with the discretive power, the power to moderate the line ; and the court of equity, controuling them in that discretion, in effect directly reversing a legal judgement, would usurp appellate arbitrary jurisdiction, which objection, if to listen to it, in the form, not of a plea in abatement, but, of an answer, be not prohibited, is repelled thus : the execution was returned in june, 1795. the return put the parties in the state in which they ought to be — the state in which return of the execution in june, 1792, would have left them, and in which if they had been loft, the officer would not have incurred a penalty, but the court of common law could not alter their adjudications, which were prior to the return — could not put the parties in the state in which they ought to be. so that a fitter case for equitable relief than this case cannot be propounded, (e)
Again, according to the testimony of the witness Thompson, when the plaintiff John Clough asked the defendent, if he then, that is, at the settlement of their accounts, wished the plaintiff John Clough to return the fieri facias 9 the doíéudent, in the language of the witness, ‘ signified that it was iuama- £ terial — he, the said Clough, might make his return, when it £ was convenient.’ the defendent, if he said so to the plaintiff Clough, prosecuting his motion for the fine afterwards, was guilty of a foul fraud, and in these days surely the rectilude of this courts interposition in the case of a fraud, — a fraud not appearing to have been known to the county court, — will not be reprobated, it would have been venial in the eyes of Edward Coke.
Moreover Hanover court, in their sentence, were as severe almost as they could he, condemning one to pay more than eight hundred and eighty dollars, for an omission by which no man could loose so much as the hundredth part of one dollar 5 and this too, notwithstanding the paragraph of the statute, *334 wfiioh authorized the condemnation, taught them that they should exert their power with discretion — discretion, in the language of grammarians, a verbal noun, from discernere, 1,’ e,’ to perceive, or note, a difference, suggesting, by its etymon, the requisite discrimination in the censure, of human actions, and intimating that the penalties to be incurred for them should be-analogous to the malignity of them, not inflicted with draconic rigor.
A short review of the principles whence is derived the power exercised by the court of equity, when it exonerates intirely from penalties, or alleviates them, may be here expedient for justifying that exercise, not only in all cases of voluntary conventional assumption, but, in some cases of legislative imposition, of penalties.
■Sympathy, fellow-feeling, experienced early and universaly, seems a natural affection, homo sum: humani nihil a me alienum,puto. Terentii heautontimor.’ it disposeth eveiy man, ■not perverted by the trade of rapine, or of what in cant-phrase is called speculating, to approve, at least in theory, the praeeept, ‘all things whatsoever ye would that men should do to yon, do ‘ ye even so to them —a sentiment, which the spirit of justice exhales, and which (he ministers of justice ought upon every occasion to inculcate.
Exaction of the penalty, denounced or stipulated for nonperformance of a duty, in every case where it would be stricto jure demandable, would contravene that divine praeeept.
Agricola, bound to carry 100 measures of corn, which lie had sold, and for which he had received the price, and to deliver them on the first day of may, to Mercator in a warehouse at Alexandria, doth not deliver them, for which failure, in terms ■of the obligation, he is obnoxious to the penalty of five hundred dollars, the warehouse is burned next day, before the commodity could have been used or disponed ; so that it would, in case iff’ accurate performance, have perished in the combustion, in this case, the people, whose system of jurisprudence would allow Mercator to recover his penalty, besides profiting by salvation of his corn, which remains unimpaired in the garner of Agricola, though his default occasioned it, can have derived little benefit from that philological erudition, by which the manners of men are polished, and their sentiments refined.
The corn, destined for a transmarine market, is not put on, board, so that the vessel performs the voyage, without a full lading, the product from sale of what was exported is, by mean of an accidental saturity, not equal to the freight; so that *335 here too, Mercator is a gainer, — a gainer (f) by how much his loss would have been greater , if the burthen of the vessel had been complete
. A cargo, deliverable on the first day of may, which arrives not until a week afterwards butt as soon as the buyer could be prepared to receive it is refuse d.
In these cases the penalties, if any were menaced by clauses for that nurpose in the contra-t s, would be strictly forfeited, but, upon what principle, we will not say with what grace, could they be demanded?
They could not be demanded conscientiously, to make reparation of damage lor a wrong, no damage was sustained, reparation and damage are córrele itives. if the one exist not, the other cannot be due.
The penalties could not be d emanded, to make atonement for an ofience against society, by fUilure to perform a moral duty, in that case the piaculnm is du e to the public, if to any ; certainly not to a private citizen ;; ilthough the defendent seemeth to have clamed it, by these words in his answer: ‘it is a neglect of duty, to which the said 1 Clough has been much accustomed.’ nor were co animations of penalties, for failures to perform private duties, in ventee 1 for preservation of good or reformation of bad manners, mi m rarely, if ever, in their ordinary dealings, are studying eth ics.
Yet in such cases, the courts of law formerly condemned the party delinquent to pay the mi det, enormous as it was. they could do or supposed they couli 1 do nothing less, they, the lex hquens, were bound to prououi ice the senrence which the law proscribed, though barbarous it seen, the contract, which, obliging parties to perform it, is a law to them in these instances, prescribed the sentence, that the penalty for non-performance must be paid.
In some of the cases suppose d, and others, which will occur Ao an attentive auditory, he, w’ ho might have been ruined by anothers fidelity, is not only sa ved by his infidelity, but would be enriched by the penalty, wh ich is demandable by strict adhaesion to the letter of the eont ;ract. the law enjoins performance, and is deaf to deprecatior i. leges rem surdam, inexorable iem esse, — nihil laxamenti nec veniae habrre — said the Viteilii, Aquilii, and the sons of Bruins , Livii histor,’ lib’ 11, cap’ 3, 4.
But is not social happiness r ationaly consulted, by confiding ,to some the power to mitigate 1 egal ametrical severity ?
*336 The law, if its text condemn one, for neglecting to do what he had obliged himself to do, which neglect is, not only not detrimental but, beneficial to another, nevertheless to pay the same penalty as it would have condemned him to pay, if the default, instead of being fortumite, had been detrimental in the extreme, ought; in such a crisis, to be dumb as well as deaf, if how to silence it on such an occasion seem a dignus vindica nodus, justice, if we could, assisted by epic or dramatic Horat.’ machinery, introduce her in a visible form, like Pallas, whom Aeschylus fabled to have appeared in the case of Orestes, would indicate,
that he, who would have beon unfortunate, if a default had not happened, ought not to be doubly fortunate by the default; (g)
and further, if the default had not been intirely compensated by the fortunate escape of loss,,’justice, suspending her balance, and putting the detriment and j penalty in opposite scales, and taking out of that which contjained the latter, until the beam should settle in a horizontal ¡position, (h) would signify that she approved the liberal and benign doctrine inculcated in the, court of equity, that forfeitures, intended to compensate detriment, are irrational, because, tit the times when they are fixed, they cannot be subjects of isipmetrical computation; and that *337 they are odious, because, being extensive enough to cover the detriment in any event, they must be extravagant in almost every event.
This is believed to be the rationale of the daily practice of relieving against forfeitures, by the court of equity, which, if no detriment hath been suffered, exonerates from the forfeiture, intireiy, and, if detriment hath been suffered, exonerates from so much of the forfeiture as excedes the detriment, by which accommodation parties are put into the state in which they ought to be, neither gaining nor losing more than they would have gained or lest if no default had been ; the state in which they would have provided, by the contract, they should be, if the quantum of detriment, to be occasioned by the default, could then have been ascertained exactly, and thus the court of equitys sentences in relieving against forfeitures, are genuine interpretations of the parties words, and apocalypses of the spirit which prompted the words.
The defendents counsil, when a motion was made to dissolve the injunction which had been awarded, to coerce him from suing forth execution in satisfaction of his judgement, affirmed, that the power of the court of equity to relieve against penalties and forfeitures, did not extend to the cases of penalties and forfeitures inflicted by statutes, although inflicted solely fir availment of private citizens, for which distinction a plausible reason cannot, as is conceived, be assigned, since the vigor of obligation to pay the statutory mulct, and of the obligation to pay the conventional mulct, is unquestionably derived from the same source, consent of the obligors, that consent indeed is not yielded in the same manner, but this difference, if influential, would favor the relieving power, in case of the statutory, more than in case of the conventional, mulct, because the consent was signified, in the latter, by an act of the party himself, in the former, by an act of his representative, the legislature.
Upon principles herein before stated, an officer, sentenced to pay a fine for not returning a writ of capias ad satisfaciendum, or an attachment in execution of a decree in chancery, who, returning the precept after the sentence, sheweth, as satisfactorily as hath been done in this case, that the creditor had not been damnified, would be entitled to like relief as is afforded by the following decree:
That the injunctions, which were awarded to restrain the defendent and the plaintiff Parke Goodall from suing forth executions of their judgements, respectively, be perpetual.

 Upon what principal, and by what ratio, this fine was calculated doth not appiarbythe sentence, it the one were 2901,’ 18s,’ lld,’3q,’ which remained unsatisfied of the debt recovered, and the other five per centum per *331 mensem, the fine would have somewhat exceded 4641.’ if the principal were the whole debt recovered, the words of the statute, ‘ it shall be lawful to fine the sheriff in anv sum, not exeeding five dollars per month, for every hundred dollars CONTAINED in the judgement’ would have au>horized infliction of a fine somewhat exeeding 7941.’ of the fine, acmaly inflicted, that it might have been greater seems the best apology for the hyperbole.

 The couit might have inflicted the fine conditionaly, reserving power to abrogate ihe sentence, upon the sheriffs returning the.writ, and making amends for any damages and costs occasioned by detention of it.

 How the neglect to return the writ, in this case, could have been detrimental to the nresent defendent, to whom the whole estate of his debitor had been transfered, and who could get nothing more from him, is n¡ t discerned, the defendent cannot avoid the objection by saying he might have been required in a controversy with some other creditor, to prove identity of tlie slaves taken m execution, the names of which, for enabling him and others to do so, the statute nquires to be endorsed on the writ; because the debitors whole estate, which must include his slaves,whether their names were or were not endorsed, appears to have been sold to the defendent: so that any proof uquireable from him would have been exhibited by that creditor himself, when he should prove the slaves, for which he was prosecuting his clame, to have been a part of the debitors estate before the sale.

 If the argumentation in the note next preceding be fallacious, which, however, it is not yet perceived to be, the sentence ought, as is conceived, not only to have affirmed the defendent to be a party injured, but, to have specified the injury: and without such affirmation and specification, ttiis court ventures to presume the defendent to be a party NOT injured, and, at law as well as in equity, not intitled to the fine.

 The eourt of equity relieves against the forfeiture, in ease of a mortgage, after a judgement in ejectment for possession of the land; relieved, before application to that tribunal was by statute rendered unnecessary, against the penalty after a judgement for it in an action of debt upon a bond, why tnay •not that court relieve against the fine or penalty in this case ?

 Ciceros magnum vecMgal Jit par simonía, in his 6 paradox, on ¡¡ovos a ao<pos •aXovcLis, is translated, by english léxico^ jraphers, ‘ a penny saved is a penny got.’

 For Agrícola to arrogate a meriSt from his own default, because it was fortunate to Mercator, would be futilrj, bu-t for Mercator to have the corn by the default, and ta have his penalty t oo by the default, whereas he must have been without both in case of no default, would be absurd, the design of the law compelling payment of penalties for non-performance of contracts was that the delinquent parties should make ayniosis, and thereby do justice, the law* is the ordinary minister of justice, when the law, executing the praeeepts of justice, exacts the penalty, although no detriment, for which the penalty should be the retribution, had emerged, the Haw thwarts the design of justice, which then, by its extraordinary minister, aequity, controuls the law.

 If, as has been supposed, the party, who hath not suffered any detriment by the default, be not entitled in equity to the penalty; he ought to take only so much of the penalty as is equal to the detriment, if any he bad suffered, a penalty threatened for not performing ,a contract is not like a wager, in which the whole stake is lucrative, this was the primary and the sole object of the adventurers, they submit to the jurisdiction of fortune, an arbiter blind- to merit and demerit, whereas, in a coijlract, the object is not pure lucre, but, a commerce, mutualy beneficial, the parties intend to perform, not to forfeit, sometimes, when they foresee probability, that performance may be intercepted, or may be not eligible, resorting to calculation, they adjust the penalty by an «equation of it with the detriment, but when a penalty doth not appear to have been the result of calculation, the emblem of justice is an index signifying a requisite aequilibrium of wrong and reparation, and a consequent defalcation of penalty. |